

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Claude A. Williams
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Sir:

Opinion No. O-4493
Re: Acquisition of employment
record of an individual by
corporations succeeding in
the business of the indi-
vidual.

We have your request for an opinion upon certain facts
as applied to Article 5221b, Section 5 (c) (9). Your letter
reads:

"Please supplement the facts here recited with the
facts to be found in Exhibit A, attached. Walker, an
employer, owned and operated his individual business.
A corporation was formed for the purpose of buying this
business. Walker and his wife owned most of the stock
and he actually controlled the corporation. After the
corporation had operated the business for more than a
year, Walker, who had not been in business individually
since the time he sold his business to the corporation,
re-entered business. This new individual business was
not the same kind of business in which Walker was ori-
ginally individually engaged, nor was it the same kind
of business in which the corporation was engaged.
Walker individually has never terminated his coverage
in accordance with the terms of Section 8 (c) unless the
letter mentioned below amounts to such application for
termination. Walker is now operating his individual
business and is the controlling interest in the corpo-
rate business, which is likewise operating. All proce-
dural steps before the Commission have been properly
taken.

"Query: Who is entitled to the employment exper-
ience established by Walker individually prior to the
acquisition of his business by the corporation? If the
corporation is entitled to the experience, what tax
rate is applicable to Walker individually?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"On June 30, 1938, this Commission received the letter a copy of which is attached as Exhibit B. This information is included for the reason that the taxpayer feels that the letter amounts to an application for termination of coverage under Section 8 (c) of the Act, Article 5221b-6 (c), Vernon's. If it is your opinion that the letter in itself actually does amount to an application for termination of coverage, we still request your opinion on the main question asked. In this connection a letter dated January 22, 1942, from Mr. Rice M. Tilley, attorney for the employers, is attached as Exhibit C."

Article 5221b, Section 5 (c) (9), Vernon's Revised Civil Statutes, reads:

"For the purposes of this section, two or more employing units which are parties to or the subject of a merger, consolidation, or other form of reorganization effecting a change in legal identity or form, shall be deemed to be a single employing unit if the Commission finds that (i) immediately after such change the employing enterprises of the predecessor employing unit or units are continued solely through a single employing unit as successor thereto; and (ii) immediately after such change such successor is owned or controlled by substantially the same interests as the predecessor employing unit or units; and (iii) the successor has assumed liability for all contributions required of the predecessor employing unit or units; and (iv) the consideration of such two or more employing units as a single employing unit for the purposes of this section would not be inequitable.

"No rate of less than two and seven tenths (2-7/10%) per centum will be permitted an employing unit succeeding to the experience of another employing unit pursuant to this section for any period subsequent to such succession except in accordance with regulations prescribed by the Commission, which regulations will be consistent with Federal requirements for additional credit allowance in Section 1602 of the Internal Revenue Code, and consistent with the provisions of this Act, except that such regulations may establish a computation date for any such period different from the computation date generally prescribed by this Act, and may define the words 'calendar year' as

meaning a twelve (12) consecutive month period ending on the same day of the year as that on which such computation date occurs."

At the time of the incorporation of Walkers business Section 5 (c) (9) was not a part of Article 5221-b, it having been enacted by the Forty-seventh Legislature in 1941. Therefore, the Commission had no regulation on the transfer of employment records in 1938. We are informed that you now have a regulation providing for a waiver of the employment record by an employer transferring his business to another.

We are unwilling to say that Walkers letter of June 28, 1938, is a literal compliance with Section 6c providing for a termination of his coverage. But, the information supplied reflects that Walker has since waived his right to the employment record made as an individual prior to July 1, 1938. We entertain no doubt that he would have waived that record in July, 1938, if the Commission had provided for such an act at that time. This conclusion is based upon the letter to the Commission of June 28, 1938; the fact that there was no cessation of the business; there was no loss of time by any employee; the same business in every detail was continued save the change in legal identity.

The employer asked if the corporation would retain the same identification number indicating that he considered the change only one of legal identity. We are also informed that the corporation assumed and paid the unemployment taxes for June of 1938 after they became due on August 1, 1938.

The facts recited in your letter and the attached exhibits show that after the change in the legal identity of the business in question from that of an individual to a corporation the individual originally owning the business owned approximately 94% of the stock of the newly created corporation. That same individual that operated the original business was the managing officer and in control of the business of the corporation. The business carried on by the corporation was at the same address, used the same personnel, engaged in the same type of business, the only change being in the legal identity of the business between the close of business on June 30, 1938, and the opening on July 1, 1938.

An examination of Section 5 (c) (9), supra, discloses that this fact situation falls within the requirement of the four provisions outlined in this Section. We can see no reason for denying the corporation the benefit of the employment record of the individual. There can be no contention that it would be inequitable for the successor is the same business with the same personnel but a different legal entity. The benefits accruing to the employees of the individual would be preserved to them after the change in the legal identity of the business.

We have no decisions on this statute by the courts of Texas and we are unable to find a decision from any of the other state courts upon this subject; therefore, we are required to consider the statute and give it the construction intended by the Legislature. We believe that it was clearly the intention of the Legislature that an individual changing the legal identity of his business, but continuing the operation of the same type of business with the same personnel and with the same business policies, should be entitled to the employment record created by the individual if the provisions of Section 5 (c) (9) are not violated.

We have found in the Unemployment Compensation Interpretation Service - Benefit Series - Volume 5, No. 1, at page 131, a quotation from a ruling by the Social Security Board made on December 22, 1939, adopting the following construction of Section 1602 of the Federal Unemployment Tax Act with respect to transfers of accounts for experience for purposes of computing variations in contribution rates.

"Reduced rates based upon transfers of accounts or experience do conform with Federal standards, if confined to cases in which an entire employing enterprise and all its incidents for all purposes of the Unemployment Compensation Law are transferred to a single legal person, who may or may not be a covered employing enterprise whose account or experience is combined, after the transfer, with that of the transferor."

In our opinion the corporation created by the individual, Walker, would be entitled to the employment experience established by Walker doing business individually.

You have then asked what tax rate is applicable to Walker, individually, after having resumed or opening a new business some two years after the incorporation of the original business.

Article 5221b, Section 6 (d), reads:

"Any employing unit which is or becomes an employer subject to this Act, and which under the provisions of this subsection ceases to be an employer subject to this Act and subsequent to such time again becomes an employer subject to this Act by reason of any of the provisions hereof, shall upon again becoming an employer subject to this Act be considered a new employer without regard to any rights acquired by it during the time that it had theretofore been an employer."

Article 5221b, Section 5 (c) (7) reads:

"Each employer's rate shall be two and seven-tenths (2-7/10%) per centum except as otherwise provided in this section. No employer's rate shall be less than two and seven-tenths (2-7/10%) per centum for any year, unless and until his account has been chargeable with benefits throughout the thirty-six (36) consecutive calendar months immediately preceding the beginning of the calendar year for which rates are determined."

Since Walker was not operating individually for more than two years, we cannot believe that it was intended that the record be held for the individual for an indefinite period of time. Walker might have waited five years to begin the new business. Would it not be more inequitable to refuse the transfer of the employment record because some day Walker might operate again individually. This would, in our opinion, defeat the purpose of the statute. We, therefore, believe that when Walker resumed business in 1940 in another and different type of business that the Commission should allow him the tax rate of 2.7% as provided in Section 5 (c) (7).

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Morris Hodges
Morris Hodges
Assistant

MH:db